# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                                      Case No. 07-CR-316

**DAVID STRIBLING, et. al.,**

        **Defendants.**

## RECOMMENDATION AND ORDER REGARDING THE DEFENDANT'S PRETRIAL MOTIONS

On November 19, 2007, this court issued a criminal complaint charging David Stribling ("Stribling") and Wesley Hoze ("Hoze") with armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a), 2113(d) and 2. The defendants made their initial appearances before this court on the afternoon of November 19, 2007. On December 4, 2007, the grand jury returned a two count indictment against the two defendants named in the complaint, alleging in count one that the defendants committed an armed bank robbery in violation of Title 18, United States Code, Sections 2113(a) and (d), and in count two that the defendants possessed a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1) and (2). On December 18, 2007, the grand jury returned a superseding indictment adding two defendants to count one.

On December 19, 2007, Stribling filed a motion to sever his trial from that of Hoze, (Docket No. 14), and a motion to suppress statements, (Docket No. 15). In his motion to suppress, Stribling requested an evidentiary hearing. The government responded to Stribling's request for an

evidentiary hearing on December 21, 2007. (Docket No. 17.) On December 26, 2007, Stribling replied with an amended motion to suppress that was accompanied by an amended affidavit. (Docket No. 18.) Although the court noted that Stribling's request for an evidentiary hearing did not comply with Criminal L.R. 12.3, the court nonetheless granted Stribling's request. (Docket No. 19.)

An evidentiary hearing was held before this court on January 16, 2008 to resolve the factual dispute over whether it was Stribling or law enforcement who re-initiated the interrogation and whether Stribling's statement was voluntary. A summary of the evidence adduced at the hearing is set forth below. The parties do not dispute that following his arrest on November 15, 2007, Stribling was advised of his constitutional rights and he invoked his right to counsel; upon invoking his rights, law enforcement did not question him further at that time. And, on November 19, 2007, Stribling signed the "Advice of Rights" form, (Docket No. 17-2), was interrogated, and gave an inculpatory statement. (See Docket No. 19.) The factual dispute regarding who re-initiated the interrogation on November 19 is crucial to the resolution of the motion to suppress.

The pleadings on the defendant's motions are closed and the matters are ready for resolution. A final pretrial conference is scheduled for February 22, 2008 and a jury trial is scheduled to commence before the Honorable Lynn Adelman on March 3, 2008.

**EVIDENTIARY HEARING SUMMARY**

The government called only one witness, FBI Special Agent Benjamin Hruz ("Hruz"). The defendant testified on his own behalf as the only witness for the defense. The government stated that it would like to call Detective Ralph Spano in rebuttal but was informed that he was off work. The court denied the government's request for an adjournment, stating that although the defendant was not entirely clear in outlining the facts in dispute and did not conform with this district's local rules in his request for an evidentiary hearing, it was nonetheless clear that the issue in dispute was

whether law enforcement or the defendant re-initiated the interrogation, and thus the government was given the opportunity to have available the witnesses it felt were necessary, including Spano.

**FBI Special Agent Benjamin Hruz**

On November 19, 2007, Hruz spent much of the day preparing the criminal complaint in this case, which was issued by this court prior to Hruz meeting with Stribling. At approximately 2:30 P.M., Hruz went to the Milwaukee Police Department Police Administration Building ("PAB") along with three other FBI agents to transport Stribling and Hoze to their initial appearance on the complaint. When he arrived at the Criminal Investigation Bureau on the fourth floor of the PAB to receive Stribling from state custody, Milwaukee Police Detective Ralph Spano ("Spano") transported Stribling from the fifth floor of the PAB, where the city jail is, to the fourth floor. Upon meeting with Stribling on the fourth floor, Detective Spano informed Hruz that Stribling wished to talk with him. Spano transported Stribling to a small interview room in the Criminal Investigation Bureau. Spano did not provide Hruz any information as to the attendant circumstances which resulted in Stribling's apparent wish to talk, and Hruz did not ask either Spano or Stribling for these details.

Once in the interview room, Hruz asked Stribling if he wished to talk. Stribling replied that he did. Hruz then said that because Stribling previously invoked his right to an attorney, he would have to re-advise him of his rights and he would have to waive these rights before they could talk.

Hruz advised Stribling of his rights using a standard FBI "Advice of Rights" form, which is a form that Hruz always carries with him. Hruz read this form to Stribling and Stribling read along. Stribling then signed this form. Then below Stribling's signature, at the suggestion of Spano, Hruz wrote "I previously invoked my rights to Detective Spano & wish now to talk. I have initiated this contact." Stribling then signed this form again immediately following this handwritten statement.

The signatures of Hruz and Spano also appear on this form as witnesses. A copy of this form was received as Exhibit 1.

Hruz then proceeded to ask Stribling questions about the robbery and other individuals. Hruz did not discuss potential punishment, made no threats or promises, and Stribling never made any requests of Hruz. Stribling did not appear to be in any distress at any point during the interview and acted like any other prisoner Hruz interviewed. Stribling was quiet and soft-spoken. Stribling answered Hruz's questions appropriately and appeared to understand him. At one point in the interview when Hruz asked about other persons involved in the robbery, Stribling stated that he did not wish to talk about other people. Stribling then said that he did not wish to talk anymore, and at this point Hruz ended the interview and transported Stribling to federal court for his initial appearance. According to Hruz, Spano was present for about 70% of the interview and another agent who had accompanied Hruz to the PAB was present for a small percentage of the interview. The entire interview lasted about fifteen minutes and was not audio or video recorded.

**David Stribling**

Stribling was twenty-one years old on November 19, 2007, was unemployed, and had received his G.E.D. Stribling was arrested on November 15, 2007 and remained in the City of Milwaukee jail until he was transferred to federal custody on November 19. On November 18, Stribling was transported to the emergency room of a hospital because he was having trouble breathing. Stribling had been previously diagnosed with asthma and at the emergency room he was given an inhaler. He was not suffering any breathing problems on the 19th. During this time that he was in custody, Stribling was not permitted to shower, was not allowed visitors, and was given a prison jumpsuit to wear that Stribling described as feeling like "a paper towel."

On November 15, 2007, Stribling was interviewed by Spano. Spano advised Stribling of his rights and proceeded to ask a couple questions. Stribling responded to Spano's first question indicating that it was Hoze in the car with him. When Spano asked what happened before that, Stribling responded that he did not remember, and then Stribling asked for a lawyer. Stribling further stated that his attorney's card was in his wallet. Spano then turned off the audio recorder and told Stribling that he "fucked up."

On November 19, 2007, Spano met with Stribling, and Spano informed Stribling that the FBI was coming to pick him up, and he was going to be charged in federal court. Spano then met with Stribling a second time that day, cuffed him, and told him he was being transferred to federal custody. As Spano was transporting Stribling down one floor to the Criminal Investigation Bureau, Spano told Stribling that the police had recovered Stribling's girlfriend's car and that it was in his best interest to talk to the FBI because the police already knew he committed the crime and if he cooperated, he would receive more lenient treatment. Spano further stated that Stribling's bail was $250,000 and if he cooperated, this bail might be lowered. Stribling testified that he knew his parents could not obtain $250,000 for bail. Spano further suggested that Stribling could help himself if he offered any information about persons selling drugs or guns. Spano did not ask Stribling any questions but instead simply made the foregoing statements to Stribling. This incident occurred as Spano was transporting Stribling from the city jail down one floor to the Criminal Investigation Bureau. Stribling does not recall saying anything as Spano said these things; Stribling believes he simply nodded his head.

Once he arrived on the fourth floor, Spano told Hruz that Stribling wanted to talk and Stribling was placed in an interview room. He was left alone in this room for about a minute and then Spano and Hruz came into the room. Hruz told Stribling that he would have to sign a waiver, Hruz read Exhibit 1, and Stribling signed the bottom of the form. Stribling then signed next to the

handwritten portion on the form. At the time Stribling signed the form, he did not understand what the word "initiate" meant. He did not learn what this word meant until his attorney explained it to him. Although Stribling did not understand this word, Stribling nonetheless signed the form because he was scared and believed Spano's statement that if he cooperated he would receive more favorable treatment. Spano was present for nearly the entire fifteen-minute interview with Hruz and no other agent was ever present. The interview ended when Stribling stated that he did not wish to talk anymore.

**ANALYSIS**

Prior to being subjected to custodial interrogation, it is well-established that a suspect must be advised that he has the right to remain silent and that he has the right to an attorney. See, e.g., Edwards v. Ariz., 451 U.S. 477, 481-82 (1981) (citing Miranda v. Ariz., 384 U.S. 436, 479 (1966)). When a suspect invokes his right to counsel, interrogation must cease until counsel is provided for the suspect. Id. at (quoting Miranda, 384 U.S. at 474.) However, a suspect may be subjected to further custodial interrogation without counsel if "the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 485. If the police rather than the suspect re-initiate the interrogation, any subsequent waiver of the right to counsel by the suspect shall be ineffective. Michigan v. Jackson, 475 U.S. 625, 635 (1986). "This [is] in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers . . . ." Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983); see also McNeil v. Wisconsin, 501 U.S. 171, 176 (1991) (Edwards "established a second layer of prophylaxis for the Miranda right to counsel"). The burden is upon the prosecution to demonstrate that, under the totality of the circumstances, the suspect, not the police, was the one who "reopened the dialogue with the authorities," and the suspect knowingly and intelligently waived his rights to silence and counsel. Edwards, 451 U.S. at 486 n.9.

In the present case, it is undisputed that Stribling previously invoked his right to counsel and he was subsequently re-interrogated without having been provided counsel. The question presented to this court is whether Stribling or Spano initiated the second interrogation. Based upon the evidence adduced at the evidentiary hearing, Stribling's version of events stands largely un-contradicted. However, simply because of the absence of contradictory evidence, the court need not accept Stribling's testimony as true if the court does not find it to be credible.

The single piece of evidence that contradicts Stribling's version of events and most significantly calls into question his credibility is his signed statement that, "I previously invoked my rights to Detective Spano & wish now to talk. I have initiated this contact." (Ex. 1.) Stribling admits signing this statement but denies knowing what the word "initiated" meant.

Despite Stribling's obvious motives to provide false testimony, the court finds Stribling's testimony that he did not understand what the word "initiated" meant, as well as his recitation of the relevant events, to be credible. Based in large part upon those intangibles that evade precise description, the court finds Stribling's demeanor during his testimony to be consistent with truthfulness. Stribling did not appear to be embellishing his testimony in an effort to better support his position. He was not evasive or confrontational upon cross-examination.

Additionally, the court finds that Stribling's testimony has the ring of truth to it. Stribling had been held in state custody for four days after invoking his right to counsel. Parenthetically, the court wonders as to the legal basis for this continued detention. Stribling was not charged in federal court until the 19th and the court is presented with no indication that Stribling was previously charged with this crime in state court. Although the court is not presented with any indication that a judicial officer found probable cause for his continued detention so as to avoid any Riverside problem, see County of Riverside v. McLaughlin, 500 U.S. 44 (1991), because Stribling does not raise the issue, the court shall trust that the standard Milwaukee county practice of having judicial

officers promptly review sworn Arrest and Detention Reports was followed in this case, thus satisfying the requirements of Riverside. In any event, the court finds it unlikely that after four days in jail, suddenly, just before he is about to make his first appearance in federal court, that Stribling would spontaneously decide that he wanted to cooperate and give a statement to law enforcement. Something other than the internal pangs of conscience must have motivated his decision to talk. Certainly, it is possible that a suspect could independently conclude that cooperation might result in his being released on bond. However, no evidence has been presented to give any indication that Stribling was particularly familiar with the criminal justice system, to support a reasonable inference that Stribling, on his own, reached the conclusion that cooperation at the time the federal charge was brought would be in his best interests. Stribling's explanation that he was motivated by Spano's comments seems the most plausible explanation for Stribling's change of heart.

Finally, the brevity of Stribling's conversation with Hruz is consistent with a suspect who is reluctant to talk. If Stribling was truly interested in cooperating in whatever way was necessary to perhaps garner more favorable consideration from the court with respect to bail, the court finds it unlikely that he would terminate the questioning soon after it began.

Although the word "initiated" is a word in common usage rather than a specialized term of legal jargon, the court nonetheless finds it plausible that Stribling did not understand the meaning of this word until he learned it from his attorney. However, in light of the fact that Stribling has obtained his G.E.D. and the court found Stribling to have an appropriate vocabulary and command of the English language during his testimony, the court finds that it is more likely that Stribling simply did not pay any attention to the significance of this word before signing his statement. Likely, Stribling either focused only upon the first sentence of his statement or Stribling was simply signing whatever he believed was necessary in light of Spano's representation that cooperation was necessary to be granted an obtainable bail.

Thus, the court turns to the question of whether Spano's actions ran afoul of the Edwards rule. Although it is clear that Spano "initiated" the contact in a strict dictionary definition of the word (Spano went to Stribling without Stribling communicating in any way that he wished to have further contact with law enforcement), this alone is insufficient to constitute initiation as that word is used with respect to the Edwards rule. See Bradshaw, 462 U.S. at 1045 ("[I]nquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in Edwards.")

Law enforcement re-initiating contact with Stribling for the purpose of transferring Stribling from state to federal custody did not run afoul of the Edwards rule; such contact would be simply related to the custodial relationship. Similarly, the court finds nothing inappropriate about Spano informing Stribling of the procedures that would follow, specifically explaining that he was being transferred to federal custody, was going to make his initial appearance in federal court, and that bail was going to be determined at that time.

If Spano had left it at this, and Stribling had independently come to the conclusion that cooperation at this point would be in his best interest in that he would be more likely to be granted obtainable bail, this court would likely find no Edwards problem. However, Spano pressed the point and stated that Stribling would be more likely to be released on bail if he cooperated, and thus cooperation would be in his best interest. Spano intended to provoke Stribling to talk, and the court finds that Spano's provocative statements constitute initiation, as that term is used in Edwards.

In support of this conclusion, the court turns to the definition of "interrogation," which is well established in the case law of the Supreme Court. The Court in Miranda defined interrogation as "questioning initiated by law enforcement officers." Miranda, 384 U.S. at 444. The Court later expanded on this definition and said "the term 'interrogation' under Miranda refers not only to

express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980); see also Pennsylvania. v. Muniz, 496 U.S. 582, 601 (1990) (quoting Harryman v. Estelle, 616 F.2d 870, 874 (5th Cir. 1980)) (defining interrogation as including "both express questioning, and also words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to 'have . . . the force of a question on the accused.'"). A sentence does not need to end with a question mark for it to constitute interrogation.

Applying the Innis and Muniz definitions to the facts of this case, this court believes that Spano's statements to Stribling while he was transporting Stribling to the fourth floor of the PAB constituted interrogation. These were not "inquiries or statements . . . relating to routine incidents of the custodial relationship, Bradshaw, 462 U.S. at 1045, but rather were "words . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect," Innis, 446 U.S. at 301. For example, Spano emphasized how much law enforcement already knew about the robbery and that Stribling's bail had been previously set at $250,000 and cooperation was his best hope of getting his bail lowered. Clearly, these were statements designed to elicit an incriminating response from Stribling. Although this court does not intend to conflate initiation with interrogation, i.e. it may be possible to "initiate" under Edwards in a manner that does not by itself constitute interrogation, in the present case, because Spano's statements constituted interrogation, it is the conclusion of this court that by making these statements, Spano impermissibly re-initiated contact with Stribling.

Although Hruz appears to have been innocent in any failure to scrupulously honor Stribling's rights, and in fact properly re-advised him of his rights before interrogating him and went so far as confirming in writing that it was Stribling who initiated this contact, Stribling's

subsequent statements are nonetheless inadmissible because the court finds that it was Spano and not Stribling who initiated the contact. See Jackson, 475 U.S. at 635. Therefore, the court shall recommend that Stribling's motion to suppress be granted.

**MOTION TO SEVER**

Stribling filed a motion to sever his trial from that of his co-defendant Hoze pursuant to Federal Rules of Criminal Procedure 8(b) and 14(a). (Docket No. 14.) Although Stribling alleges in the first paragraph of his motion that he was misjoined in the indictment with Hoze, later in the same motion he concedes that he was properly joined under Rule(8)(b) because he is alleged to have participated in the same act or transaction. (Docket No. 14 at 2, ¶5.) The court finds that Stribling's motion for severance on the basis of misjoinder is without merit and shall be denied. Thus, the court shall turn to Stribling's motion for relief from prejudicial joinder pursuant to Rule 14(a).

Stribling argues that he will be prejudiced by a joint trial because Hoze gave an inculpatory statement implicating Stribling. Thus, the admission of this statement without providing Stribling the opportunity to cross-examine Hoze would violate his right to confrontation. The government responds that Stribling's motion for severance is premature because it is unclear whether Hoze will proceed to trial or whether Hoze will testify at trial. Thus, the government asks this court to deny Stribling's motion without prejudice, thereby permitting Stribling to raise the issue, if necessary, closer to trial.

The court agrees with the government. At this point, Stribling's motion is premature. However, the issue was properly raised and thus is preserved should it be necessary to raise it closer to trial. Therefore, the court shall deny Stribling's motion for severance without prejudice.

**IT IS THEREFORE RECOMMENDED** that Stribling's motion to suppress, (Docket No. 15), be **granted**.

**IT IS FURTHER ORDERED** that Stribling's motion to sever defendants, (Docket No. 14), is **denied** on the basis that he was misjoined under Federal Rule of Criminal Procedure 8(b) but is **denied without prejudice** with respect to his claim that he was prejudicially joined under Rule 14(a).

**IT IS FURTHER ORDERED** that Stribling's motion to amend, (Docket No. 18), is **granted**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this <u>18th</u> day of January 2008.

s/<u>AARON E. GOODSTEIN</u>
U.S. Magistrate Judge
